IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY | ) | |
| COMMISSION, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | CASE NO. 2:09-cv-923-MEF-TFM |
| | ) | |
| READY MIX USA d/b/a | ) | (WO - DO NOT PUBLISH) |
| COUCH READY MIX USA, LLC | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

Intervenor plaintiffs Carlton Paschal ("Paschal"), Roderick Cook ("Cook"), Marvin Craig ("Craig"), Johnathan Varner ("Varner"), Eric Woods ("Woods"), and Leland Jordan ("Jordan") (collectively, "Plaintiffs") brought a complaint in intervention against Ready Mix USA ("Ready Mix"). (Doc. #15). Ready Mix then filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. #26). In their response in opposition to the motion to dismiss, Plaintiffs moved the Court to strike the motion to dismiss and sanction Ready Mix, both pursuant to Rule 11 of the Federal Rules of Civil Procedure. (Doc. #28). These motions are now under submission and ready for a ruling. For the reasons set forth in this Memorandum Opinion and Order, the motion to dismiss will be GRANTED in part and DENIED in part, the motion to strike will be DENIED, and the motion for sanctions will be DENIED.

## II. JURISDICTION AND VENUE

This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1343. The parties do not assert that this Court lacks personal jurisdiction over them, and there is no dispute that venue is proper pursuant to 28 U.S.C. § 1391(b).

## III. LEGAL STANDARD

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. Therefore, for the purposes of adjudging a Rule 12(b)(6) motion to dismiss, the court will accept as true all well-pleaded factual allegations and view them in the light most favorable to the plaintiff. *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008); *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007).

While Federal Rule of Civil Procedure 8(a)(2) requires only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," as a general matter, to survive a motion to dismiss for failure to state a claim, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). The plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 559. It is not sufficient that the pleadings merely leave "open the possibility that a plaintiff might later

establish some set of undisclosed facts to support recovery." *Id.* at 561 (internal quotation and alteration omitted).

## IV. FACTUAL AND PROCEDURAL BACKGROUND

### A.  Facts Pled in the Intervenor Complaint

Plaintiffs are all black men who work for Ready Mix.  Cook began his employment in 2001.  Woods began his employment in 2005.  Varner and Jordan began their employment in 2006.  Craig began his employment in 2007.  Paschal began his employment in July 2008. Plaintiffs were supervised at Ready Mix by a white man named "Bubba" Lesco ("Lesco") until late October 2008.

Lesco subjected Plaintiffs and other black employees to consistent racial harassment and taunting and enjoyed creating tension in the workplace.  He used racial slurs when referring to black employees, including occasional use of the word "nigger."  He regularly made racial jokes.  Lesco referred to the movie "Mississippi Burning" as descriptive of what would happen to the black employees if they did not get their work done.[1]  Lesco stated that Barack Obama, if elected, "won't last a day in office" because a white person would kill him; he then changed his mind to say a black person would kill Obama if elected president.  He frequently talked about wanting "black pussy" and would command Plaintiffs in racial terms, such as, "Get your black ass over here."  Lesco also kept a Confederate flag-themed picture frame on his desk, which upset black employees.  He once hung a noose in the break room

---

[1] "Mississippi Burning" is loosely based on the real-life murders of three civil rights workers in Mississippi in 1964.

and told black employees that it was for them if they did not get their work done that day. Plaintiffs complained, and the area manager made Lesco take down the noose. However, he continued to use racial slurs. On October 20, 2008, Lesco used black pepper on a white piece of paper as an illustration of the Million Man March (the "pepper incident").[2] He then folded the paper so that all the pepper fell to the center and said, "This is y'all after the Million Man March standing in line at KFC." He added, "Hey, don't get mad at me 'cause my daddy and uncle were fucking your mamas and daughters while y'all were out in the cotton field."

Management at Ready Mix did not take proper steps to protect Plaintiffs from Lesco's harassment and contributed to their sense of unease. Prior to the pepper incident, members of management had witnessed some of Lesco's conduct, and several complaints about Lesco had been made to higher management. Lesco's conduct created a tense environment in the workplace and made it difficult for Plaintiffs to do their jobs. However, he was not terminated until several people, including Plaintiffs, complained to the home office about the pepper incident. Following Lesco's termination, one manager told Plaintiffs that management wanted to handle the matter locally, and he wished Plaintiff had not called the home office. Another manager stated that management knew Lesco's conduct would "come back to bite him in the butt." Another manager acknowledged that Lesco had twice been written up for his conduct prior to the pepper incident. However, Lesco was still allowed to return to Ready Mix after his termination to ask who reported his harassment to the home

_____

[2] The Million Man March was a rally consisting mainly of black men, held in Washington, D.C. on October 16, 1995.

-4-

office, putting Plaintiffs in fear of retribution and retaliation.

On or about October 2008, managers Ty Tyson, Charles Bell ("Bell"), and Chris McGough ("McGough") had a meeting with all of the employees. Bell stated that Lesco was fired for the pepper incident and admitted that research on Lesco showed that he had caused many similar problems in the past. Referring to the pepper incident, McGough then asked the employees why they were sitting in the break room at the time. An employee replied that they were eating breakfast in the break room, as they did every day. McGough responded, "The incident is y'all's fault because if you all were cleaning our trucks or cleaning up around the yard this would have never happened." Woods replied that the employees eat breakfast in the break room every morning. McGough said, "Well, that won't happen anymore. When you clock in you need to find something to do on the yard."

On or about November 2008, McGough and Ty Tyson had another meeting with the employees, though Ty Tyson never spoke. McGough entered the break room and gave the following speech:

> We're going to have a meeting so shut up, sit down, and listen. If anybody responds back to anything I say, you won't have a job. All I've been hearing around the plant from y'all is negative stuff about [Ready Mix plant manager] Russell [Sellip] ("Russell" or "Sellip") and how we run stuff around here. Russell is the plant manager and y'all have to play by his rules whether you like it or not. If Russell is wrong, we still have to stick with what he said and that's what we are going to act on. There's a few bad apples around here trying to bring the company down. We really don't need any of y'all. I've got a bunch of applications upstairs and guys knocking down my door looking for jobs. I'll have somebody driving those trucks tomorrow. You can clock out and go home and never come back. If you leave this yard with a wet load, you will be written up and fired, it doesn't matter if the batch man did it or not.

You are responsible for that load.

McGough discussed other issues about how the employees should properly perform their job duties, then closed by saying, "I hope I see some of y'all come back to work tomorrow and when you come back I hope you have a better attitude about your job.  Have a nice day."

Prior to November 2008, Cook's title at Ready Mix was dump truck driver.  In November 2008, Fred Tyson, another Ready Mix manager, told Cook not to drive the dump truck anymore, because business was slow and they did not need any more material.  He told Cook to instead drive a mixer.  However, several times a month the managers at Ready Mix would tell Cook to get in the dump truck and haul material into the plant.

On or about December 2008, Cook overheard Bud Howell ("Howell") ask Russell over the radio if Cook was available.[3]  Russell informed Howell that Cook was near him, and Howell told Russell to keep Cook at the plant until Howell could get there to speak to him. Cook was on a tight schedule, so he told Russell he could not wait long.  Howell told Cook through Russell to call him instead.  Cook called Howell on his way home.  Howell told Cook he was concerned because he was notified in a letter from the Equal Employment Opportunity Commission ("EEOC") that Cook had filed a claim of racial discrimination with the EEOC against Ready Mix.  Howell asked Cook how far he intended to take his complaints and said that he would "tell [Cook] what's going to happen to [him]" as a result of his going to the EEOC.  Cook asked Howell what he meant, and Howell responded, "I

_____

[3] Plaintiffs' intervenor complaint does not describe Howell's employment, but he appears to be upper management at Ready Mix.

don't mean it like it sounds.  I'm not trying to discourage you."  Howell then apologized for not being around the Ready Mix plant to check on things, explained that his wife had been ill, and said he was willing "to turn some heads to make everything go away."

On or about December 2008, Howell met with only black employees.  Howell discussed the letter from the EEOC.  He said he was not aware of Lesco's conduct until recently.  Howell said he took full responsibility and asked Bell to find out what was going on at the Ready Mix plant.  Bell, however, only questioned white employees and did not attempt to get the perspective of black employees.  Howell followed up this meeting with a meeting for all employees.

On or about January 2009, Sellip asked Cook if he wanted to be the driver of a dump truck or a mixer, and Cook said he wanted to stay in the dump truck.  The following day Sellip told Cook that they did not need a dump truck driver, and Cook would stay in the mixer.  Ready Mix management had Cook occasionally drive the dump truck after that, but he never worked a full shift in the dump truck.

On or about July 2009, Bell, McGough and Fred Tyson had a meeting with Plaintiffs to discuss changing from pay-by-the-hour to pay-by-the-load.

On July 15, 2009, Russell told Cook and Otis Streeter ("Streeter") that they needed to go to "Pri-Med" to take a random drug test.  Cook had already taken several "random" drug tests since complaining about Lesco.  When Cook asked why he had to take another drug test even though several employees had not been tested in over a year, Russell claimed

the names were randomly generated by a computer program.  Russell said, "I don't have anything to do with that," and started laughing.  Cook is embarrassed that Ready Mix has caused his co-workers and the people at Pri-Med to think that he is a drug user.

Russell told Cook and Streeter they would have to drive their own vehicles to Pri-Med to get tested.  When Cook, with Streeter, arrived at Pri-Med, the clerk recognized him from previous drug tests and told him somebody had called them three times to ask if Cook had arrived yet.  Streeter asked Cook to stop at a Church's Chicken restaurant across the street from Pri-Med on the way back to Ready Mix, and Cook complied.  Cook used the drive-thru, and the two ate their meals on the way back to Ready Mix.

Russell asked Cook and Streeter for copies of their drug test when they returned to Ready Mix.  Cook refused, saying it was personal information he did not have to turn over to Russell.  Russell responded by walking out and slamming the door.  Minutes later, Russell called Cook up to his office and asked Cook where they went after leaving Pri-Med.  Cook told Russell they went by the Church's Chicken restaurant on the way back to Ready Mix.  Russell told him they were on company time, and should not have made any stops after leaving Pri-Med.  Cook asked Russell how he knew they went anywhere after leaving Pri-Med, and Russell responded that he followed Cook in his car.  Russell added that a woman at Pri-Med called him and told him when Cook and Streeter left.  Cook said the people at Pri-Med did not have the time to notify Russell of Cook's whereabouts and accused Russell of calling Pri-Med to get the information.  He added that if Russell had time to follow Cook and

Streeter, he should have just driven them there instead of making them use Cook's vehicle. Russell informed Cook that Fred Tyson told him that Cook was in trouble, and his pay would be docked for the minutes he was in the Church's Chicken drive-thru. Cook noted that Russell often went to get food on company time before leaving Russell's office. Cook called Bell to tell him what happened, but Bell seemed uninterested while telling Cook he would take care of the problem.

On or about July 28, 2009, Curry Dick, a white employee at Ready Mix, told Cook that Bell had given him the dump truck job. Nobody in management had asked Cook if he wanted his position as dump truck driver back when it became available, even though he still did occasional work as the dump truck driver.

On or about July 31, 2009, Howell, McGough, Fred Tyson, and Scott Davis came to the Ready Mix plant for a meeting. Russell told Plaintiffs to go home, as they had no more work for the day. Cook left work, but he forgot something and turned around. At a red light on his return drive to the plant, John Strickland ("Strickland"), a salesman/manager at Ready Mix, stopped to the right of Cook. Lesco sat to the right of Strickland. Cook and Strickland began making small talk about the pay-by-the-load possibility, but Lesco interrupted, yelling, "Y'all black boys gonna get fucked. Y'all black son of a bitches got me fired for saying what I said to y'all but I don't work for [Ready Mix] no more. I can say what the fuck I want to say now. Y'all black motherfuckers gonna get fucked now, y'all not gonna make no money. Yeah, I said it. Y'all black motherfuckers gonna get fucked now." Strickland smirked,

laughed, and threw his hand up to Lesco, saying "Bubba, Bubba." As Strickland pulled away when the light turned green, Lesco was still yelling something out of Strickland's truck window.

## B. Procedural Background

Plaintiffs timely filed charges of discrimination with the EEOC on or about November 12, 2008 (Paschal and Cook); November 20, 2008 (Leland); and December 8, 2008 (Craig, Woods, and Varner). Plaintiffs received determinations from the EEOC dated August 17, 2009. On September 30, 2009, the Equal Employment Opportunity Commission ("EEOC") filed suit against Ready Mix. (Doc. #1). Plaintiffs timely filed a motion to intervene on October 21, 2009. (Doc. #4). EEOC filed a notice the same day that they had no objection to the intervention. (Doc. #5). The Court granted the motion to intervene on October 22, 2009. (Doc. #6). Plaintiffs filed their intervenor complaint on December 3, 2009[4] (Doc. #15), bringing claims of discrimination (hostile work environment) and retaliation in violation of both 42 U.S.C. § 1981 and 42 U.S.C. § 2000e et seq. ("Title VII").

## V. DISCUSSION

A few things are worth mentioning about Ready Mix's filings in support of its motion to dismiss. Ready Mix correctly notes that the Supreme Court in *Iqbal* expressly stated that courts are not bound to accept as true legal conclusions, as they are with factual allegations. 129 S. Ct. at 1949. However, Ready Mix's submissions show a misunderstanding of what

---

[4] Plaintiffs had included their intervenor complaint as part of their motion to intervene. They filed the intervenor complaint again on December 3, 2009 upon request of the Court.

it is to be a "legal conclusion." Legal conclusions are statements expressing legal duties or results but omitting facts creating or supporting those duties or results. *Black's Law Dictionary* 912 (8th ed. 2004). Yet Ready Mix asserts that factual pleadings of specific occurrences, such as Plaintiffs' claim that Lesco said the movie "Mississippi Burning" would happen to them if they did not do their work, are "mere conclusions," perhaps because Plaintiffs did not include names and dates on every single factual assertion. Considering that Ready Mix indiscriminately called everything in Plaintiffs' intervenor complaint a conclusion, the Court is left to assume that the few times Ready Mix properly identified a legal conclusion as such was pure accident.

Even when Ready Mix landed on something that could be labeled a conclusion, its assertions often remained overly broad. For example, Ready Mix notes Plaintiffs' allegations that "Lesco's conduct made the workplace very tense" and management "did not take proper steps to protect Plaintiffs from Lesco's harassment," and asserts that these are "unsupported" conclusions. Unfortunately for Ready Mix, these "conclusions" are supported by the previous paragraphs in the intervenor complaint. Prior to these "conclusions," Plaintiffs made specific allegations about Lesco's conduct—which, if true, would plausibly create a tense workplace—and complaints to managers about Lesco's conduct that had gone unheeded. Ready Mix argues as if each numbered paragraph of Plaintiff's intervenor complaint was itself a separate complaint.

An appropriate summary of the bulk of Ready Mix's arguments in its briefs in support

of its motion to dismiss is "more."  No matter what the Plaintiffs plead, Ready Mix insists they should have pleaded more.  Ready Mix seems to argue that Plaintiffs must include, for every factual allegation, the date of occurrence and the name of every single person involved. Otherwise, it somehow becomes a "conclusion."

In short, many of Ready Mix's arguments in favor of dismissal are clearly without merit.  What remains is to consider the factual content of the Plaintiffs' intervenor complaint to determine if it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S. Ct. at 1949.  This inference comes from Plaintiffs pleadings "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element."  *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1296 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 556).  The elements of claims brought under Title VII and 42 U.S.C. § 1981 are identical.  *E.g.*, *Bryant v. Jones*, 575 F.3d 1281, 1296 n.20 (11th Cir. 2009).

The elements of a hostile work environment claim are: (1) the employee belongs to a protected group, (2) the employee was subjected to unwelcome harassment, (3) the harassment complained of was based on the employee's membership in the protected group, (4) the harassment complained of was sufficiently severe or pervasive to alter the terms and conditions of employment and create a hostile or abusive working environment, and (5) the employer is responsible for that environment under either a theory of vicarious or direct liability.  *E.g.*, *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1300 (11th Cir. 2010).  Plaintiffs pled

-12-

that they are all black.  They specifically pled several instances of harassment based on their race.  They made factual allegations both that complaints were made about the harassment to management and that management acknowledged having received complaints without taking action to fix the work environment.  The Court can reasonably infer from the factual allegations in the intervenor complaint that Ready Mix is liable for creating a hostile work environment.

The elements of a retaliation claim are: (1) the employee engaged in statutorily-protected expression, (2) the employee suffered an adverse employment action, and (3) the adverse action was causally related to the protected activity.  *E.g.*, *Webb-Edwards v. Orange Cnty. Sheriff's Office*, 525 F.3d 1013, 1028 (11th Cir. 2001).  Once Plaintiffs are tasked with proving the elements of these claims, they need only show that the adverse action and the protected activity are "'not completely unrelated'" to prevail on the third element.  *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004) (quoting *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998)).  Plaintiffs state in their intervenor complaint that each individual plaintiff, from mid-November 2008 to early December 2008, filed charges of discrimination with the EEOC.  Plaintiffs also plead facts indicating that management treated black employees differently, giving rise to the reasonable inference that any adverse employment action is "not completely unrelated" to that protected activity.  However, Plaintiffs fail to plead an adverse employment action for any employee besides Cook.

The United States Supreme Court has held that an employment discrimination plaintiff

need not plead specific facts establishing a prima facie case; he or she need only satisfy the ordinary rules for pleading. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511, 515 (2002). The Supreme Court noted in *Twombly* that this remained true. 550 U.S. at 569–70. However, to satisfy the ordinary rules for pleading, "legal conclusions can provide the framework of a complaint, [but] they must be supported by factual allegations." *Iqbal*, 129 S. Ct. at 1950. Plaintiffs alleged that they "were retaliated against by Defendant because of their opposition to the unlawful employment practice." But they allege no facts to support this bare legal conclusion, except in the case of Cook.

Plaintiffs plead that, after Cook filed charges with the EEOC, Ready Mix sent him to "random" drug testing an abnormal number of times and gave a white employee Cook's former job as dump truck driver without consulting him about it first. Plaintiffs allege nothing along those lines as to any of the other plaintiffs. The closest Plaintiffs get to alleging any facts that might give rise to the inference of an adverse employment action is that Ready Mix had a meeting with the Plaintiffs to discuss pay-by-the-load, and Lesco later implied that they would make less money as a result of this system. However, Plaintiffs nowhere plead that Ready Mix instituted pay-by-the-load; in other words, they nowhere plead that Ready Mix actually took an adverse employment action against any plaintiff besides Cook. The pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949. The allegations in the intervenor complaint do not include facts that "'raise a reasonable expectation that discovery will reveal

-14-

evidence of" the necessary element" of an adverse employment action against any plaintiff besides Cook. *Watts*, 495 F.3d at 1296 (quoting *Twombly*, 550 U.S. at 556).

## VI. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Ready Mix's motion to dismiss (Doc. #26) is GRANTED in part and DENIED in part.  It is granted to the extent that the retaliation claims asserted by plaintiffs Paschal, Craig, Varner, Woods, and Jordan in counts three and four of the intervenor complaint (Doc. #15) are DISMISSED.  It is denied in all other respects.

It is further ORDERED that Plaintiffs' motion to strike the motion to dismiss (Doc. #28) is DENIED, and Plaintiffs' motion for sanctions (Doc. #28) is DENIED.

DONE this the 26th day of August, 2010.


_____
       /s/ Mark E. Fuller
CHIEF UNITED STATES DISTRICT JUDGE